I'm here from 36 Elmsford Apartment Associates v. Cuomo. I can see both counsel are on the line. Please the court, I am Mark Gutterman. My firm represents 36 Apartment Associates, 66 Apartment Associates and Elmsford Apartment Associates. In the lower court case, the state law issue before the lower court should be reviewed on two different levels. The first level is the fact that the lower court erred in not even considering the impact that state law had on the effectiveness of Governor Cuomo's Executive Order 202.28. The parties addressed the issue in the supplemental briefing, but with respect to the eviction moratorium claim, the Executive Order has expired. There's now a statute in place. Why isn't the claim challenging that part of the Executive Order move? In December of 2020 and then again in May of 2021, the legislature enacted the COVID Emergency Eviction and Foreclosure Prevention Act. That act actually did nothing substantively. All it did was kick the bucket down the road first to May 1st and then to August 31st for application of the Tenant Safe Harbor Act from 2018. Your challenge here is to the Executive Order, correct? That provision expired in August of 2020. It has not been extended. It has not been reimposed. Why isn't that claim moved? It's our position, Your Honor, that this claim comes under the exception to mootness as the Supreme Court recently held both in the Roman Catholic Diocese case and again in Tandon v. Newsom more recently, where the threat that these kinds of Executive Orders might be reimposed is sufficiently significant that the court should hear and decide the underlying issue, even though the governor may have changed the Executive Order itself. As you pointed out, there's been legislation since the Executive Order, right? Why would we have any reason to believe that the governor would take executive action extending the eviction moratorium when the legislature has already taken a variant of that action? So I could understand if there had been no action by the legislature, you say, well, you know, the governor might extend it. I understood why you took the position back in June or July or August of 20. But why would we have any reason to believe that the governor would take that action now that there's legislation in place? Because in fact, that's exactly what he's done. Not to extend this moratorium. He's taken different action, right? Well, he's taken through another Executive Order. We had the Safe Harbor Act from June, July of last year, which had a defined term of a COVID-protected period of time, which he started with the legislation started at 2.66. Governor Cuomo extended that moratorium backwards to before March 7. And that, in fact, that Executive Order is still in place now. So even though we had legislation, which the governor signed, which commenced the moratorium as of March 7, Governor Cuomo, by Executive Order, extended it backwards. And that's still in place. We have no reason to believe that Governor Cuomo, since he's already acted again in derogation of a statute, that he wouldn't do it again now. Why don't you move on to the security deposit provision before you run out of time? The state agrees that that claim is not moot. Well, actually, if anything was moot, it would be that claim because that claim has not been, that provision, so far as I know, hasn't been extended. Now, we again believe that... In fact, until, until June 7, or something like that, right? I thought it has been extended repeatedly. Unfortunately, it is difficult, if not impossible for us as litigants, and quite frankly, the judges sitting in courts trying to make sense of these executive orders, exactly what the governor does, because he never followed the dictates of Executive Law 29-J. He did what he wanted in a manner that he felt was appropriate, but he never identified the specific statutes that were going to be suspended. I'm not sure what you're saying. Are you saying that it is moot? I'm not sure what you're arguing here. I'm saying, I could, I think that it's moot, because I think that it hasn't been extended, but clearly the court thinks that it has been extended. I don't know of any circumstance in which the tenants are still trying to use it. I'd rather spend the court's time getting into the state law issue, which I think is extremely important. Let me ask you this, maybe to reframe this question. Are you seeking, right now, any relief from this court with respect to the security deposit question? Yes. What relief? What relief are you seeking? It's our position that the governor does not have the right... No, no, that's why. That's why you think... What relief are you seeking from us? I'm asking you to issue an order that precludes the governor from doing this. So you want an injunction? Yes, prospectively injunction. And I guess the question is, are you taking the position that the security deposit provisions are no longer in force? Because I don't understand, if that's your position, how you're asking us to enjoin something that you're just telling us is not currently in force. I am unaware, as we sit here today, that it is still enforceable. No, no, no. Enforced. Not whether it's enforceable. Whether it's legal. That's your argument. Are you arguing that this is still a law out there? Whether an illegitimate law or not? An executive order that is still by its terms enforced? I am not aware of it still being enforced, no. All right, let's hear from the state. Let's hear from the state, and then you have three minutes for rebuttal. I'm sorry, Judge Jacobs, were you going to ask something? No, I was just about to say, if counsel thinks it's moot, that's good enough for me. You're right, I could have obviously taken the position and just run with it, because you seem interested and receptive to that. I mean, I'm interested in a lot of things that are not the subject of litigation. If this is moot, then it's not the subject of litigation. Let's hear from the state, because I think my understanding from the state supplemental letter brief is that the security deposit provision remains in effect through June 9, 2021. Ms. Fang, why don't you go ahead and start with that? Good morning, Your Honor. May it please the Court, Linda Fang on behalf of the Governor. It is, in fact, our position that the security deposit provision of the executive order that was originally imposed in May of last year is still in force. We've cited the series of executive orders that have been with us since that time. There are a lot of them, so there is a lot to sift through, but in the Governor's view, that provision is still in force. So I'm happy to just jump right in to talk more substantively about that provision. Well, let me just ask something that is a question provoked by your adversary's argument. There are two provisions at issue. Is there any assurance that if there's a spike in the pandemic in the state of New York, that this will not be deemed a proper measure to extend or to reimpose? Yes, Your Honor. We think there are many different changes in circumstances since the time, if we're talking about the eviction moratorium. Yes, that's what we're talking about. That's what the case is about. Exactly. So the provision that is moot is the temporary restriction on evictions. And there are three reasons to think why that is not moot. Is it moot if there's a prospect that it'll be reimposed, if there's a spike, because this pandemic has had its ups and downs? It absolutely has. But we don't think the capable repetition exception here is satisfied. And that's because this original executive order was issued at the height of the pandemic in May of 2020 at a time when the legislature had not had time to act in this field. And now the legislature has had time not only in June of last year to pass the Safe Harbor Act, which was essentially also a very short stopgap measure from the legislative perspective. But in December of 2020, and now recently extended in earlier this month, they've enacted a very comprehensive statutory scheme. And that statutory scheme and any restriction that plaintiffs face now from eviction restrictions arises out of that scheme. And that has never been a scheme that plaintiffs have sought to challenge. They've had the opportunity to do so. And that is something that other parties have challenged. So, in other words, there's no reason that the governor would issue a new executive order addressing this issue because there is a comprehensive statute on the books already. Exactly. And that's one of the key differences here between other cases where there may be reason to think that there would be a reimposition. But the type of executive order restriction at issue here with respect to evictions was really a temporary executive stopgap until the legislature could act. They acted in June. They acted again in December in a fundamentally comprehensive way. They've now legislated in this area having to do with COVID-related evictions. And that statutory scheme is both substantively and procedurally different. It's broader in a lot of senses. It's narrower in other senses than the executive order that was initially issued in May. And that's the reason, Your Honor, Judge Jacobs, that's why there wouldn't be reason to think that this is likely to happen again. What does the statute say about security deposits? So, it doesn't say anything about security deposits. And that's why the security deposit provision is still on the books. It's not moot. That is still in force. And with respect to the security deposit provision, that, in fact, benefits landlords. By the way, before you get into the merits of it, it expires on June 9th. Is that right? Currently, yes. The last executive order extended it through June 9th. And is that likely to be extended by the governor? I don't know. I can't speak to that. How quickly, in what time period before expiration are these typically renewed? Typically, they were renewed in the 30 days. They were renewed on the last day of the 30 days. In more recent, in the last couple of months, since the legislature also acted to repeal the governor's directive authority that was originally imposed and given to the governor in March of last year to deal with this pandemic. The executive orders have come with more frequency. So, I can't speak to when is it likely to be. But we can certainly update the court if it does become moot on following argument. And we can submit a letter to that effect. Should we wait until June 9th to see whether it's extended? You will hear as soon as we know. Otherwise, we're going to be checking in with you every month. And if it keeps getting renewed, we may need to adjust. If it doesn't get renewed and expires, there's nothing you're telling me, counsel, that means it might not be or the governor doesn't think it should be reimposed if there's a spike in the pandemic. Well, I think there, again, there's reason to think that that wouldn't, you know, we're at a very different place pandemic wise. And, you know, pandemic conditions have changed. We've had ups and downs. Including new strains of this, which are unknown and unknowable. That's true. And I can't speak to that. But I do think that the fact that the legislature has now legislated in a very comprehensive way covering this situation. And the third factor I think we do point out in our supplemental briefing and also in our original briefing as well is that the substantial rental assistance programs have now been enacted. There's monies that are coming directly in the matter of, you know, in the next week or so, it will be operationalized in New York State to have basically eligible tenants have their rent arrearges paid directly to the landlord. So, you know, a lot of the conditions of what were on the ground at the time the governor had to impose this very temporary emergency stopgap through executive directive authority, which he no longer has now. He doesn't have the directive authority any longer. But, you know, also, there's just very different conditions. And those are the reasons why there's no likelihood, I think no reasonably likelihood that this will be recurring. And again, the court's precedence on the capable repetition exception demonstrate that it can't just be a mere hypothetical possibility. So there are strains, but vaccinations have improved. You're not arguing that this claim is presently moot, right? So the security deposit provision is not moot. Right. So why don't you, you were about to address it on the merits. Why don't you go ahead? We would be happy to address it on the merits. I think I was beginning to say as well, the security deposit provision, in fact, benefit. To use what, in essence, was a pot of money that was they couldn't. Weren't they always allowed to do that if they reached an independent agreement with the tenant and said, oh, you know what? You don't have to pay next month's rent right now. I'll just use the security deposit. Are you good with that? And if they had agreed with that, couldn't they do it? We don't believe so, your honor, because general obligation law seven dash one oh three. In fact, obligates mandates landlords during the period of a tenancy to keep the security deposit in an interest bearing account. In essence, an escrow for the security deposit. If a landlord doesn't want a security deposit, they are required to charge. No, they're not required to have a security deposit. So why can't in the middle of the contract they say, oh, you know what? Don't worry about it. I don't need the security deposit because this whole thing is asymmetrical, right? The landlords don't get to use the security deposit. Tenants are the ones who have the option of using it and forcing it on the landlords. And this is a symmetrical thing. And it sounds like the landlords don't. You're telling me landlords should be happy about this, but they seem to be suing. Well, we have these landlords that aren't happy about this. And again, it's unclear to me because they also don't think it's enforced currently, but we believe it is. But on the whole, this provision allows landlords to receive one month of rent from a pot of money that they otherwise may not have been. Well, what about the fact when you get to what I think is the meat and potatoes of this, which is I think the landlord's point is, if you use up the security deposit now, these people are going to be stuck in my property for a long time. You know, whatever, bending the Venetian blinds, poking holes in the wall. And then when they move out, I don't have any money to repair the damage. And that's why we have a system with security deposits in place. So assuming that that's their argument, why don't you tell me why that's even though to the detriment of the landlord, nevertheless, in your view, not a regulatory taking. It is not a regulatory taking because both before and after the executive order, tenants are always liable for excess damage. So in the land, not have been able to receive from a pot of money that the tenant otherwise may not even have access to. And now they can basically collect a month of rent they might not otherwise have received at the time. But it really merely shifts the temporal liability because this provision, in order to invoke it, the tenant has to be has to be qualified. They have to face a financial. The hardship due to covid, they also have to agree that they were replenishing a security deposit. When do they have to replenish? They have to replenish starting three months after the security deposit is applied. But again, this is just shifting a pot of money. So this is not any different than a situation where after the fact landlord, they have excess damage. They still have the ability to proceed against the tenant. And we haven't the landlord is at risk for three months in a sense until the security deposit is replenished. Well, the security deposit gets replenished at a one twelfth rate. So they replenish it at some rate starting three months. But again, that's only if that's only assuming it happens. These are people who, by definition, have hardship because they can't pay the rent. And then one would think that if this is a group of people who can't pay the rent, odds are pretty strong that they're going to start defaulting when it comes time to replenish the security deposit. Right. Isn't the thought that the argument from the landlords? Look, in reality, you're draining my security deposit and I'm still not going to get rent and nobody's going to be replenishing this. And then at the end of the day, when I sue them, they're judgment proof. Well, your honor, there's many reasons to think why. Again, this is proceeding on a regulatory taking analysis on a facial basis. So in every single application, they would have to demonstrate. And well, on the analysis, on the on the on the sequence of events, just hypothesized by Judge Nardini. Why isn't there a problem under the contracts clause? Well, there's no problem under the contract clause because, again, there's no impairment of the obligation. Tenants remain obligated. So, again. But there is there is an impairment. Judge Nardini just outlined the principle. You you have a landlord has the ability to to require a security deposit because otherwise you can't move into the apartment or the house. Whereas afterward, no one is going to put a high priority on repaying their their security deposit when they have a lot of other things that they have to deal with in life. Right. So I guess that from the landlord's perspective, they're they're getting a month of rent. At the front end, in order to deplete that, that that security deposit provision only gets invoked when the landlord gets a month of rent that they otherwise wouldn't have been able to get. But you're arguing again that the landlord should be happy about this. And it's been pointed out landlords are suing. Besides, how many happy landlords are there in this state anyway? This is the thing where the landlords are going to end up are going to end up holding the bag when the tenant moves out and trashes the apartment. Well, I think, Your Honor, there again, the legislative enactments about the rent arrearages that are now going to go directly to the landlords for this whole period of the COVID eviction restriction. I think I beg to differ. The landlords will be made whole from the government. And again, I just for the security for the security deposit as well. I don't know the operational. It's going to be for that. From a contract's point of view, whether you get your money back is very important. Right. But I guess maybe I can just flip to so even assuming that there is a substantial impairment, that's the first test of the contract's clause. But time again, the Supreme Court has made clear that not every impairment. So even in this court's case in Buffalo, teachers, I think, demonstrates this principle. So even if there is a substantial impairment of contractual obligation, we don't think there is because it's really a temporal shift of the obligation. It's, you know, the whole premise of these restrictions and with COVID is that this is hopefully going to be temporary situation. These were people who were not behind on their rent before COVID and they lost jobs and things are going to come back. But again, the contract's clause doesn't trump a police powers, the traditional police powers of the state. And here we have all the the the fundamental factors where courts have found that this is not going to be a contract. But you're but you're you're you're assuming that the ability, the requirement that they replenish is the is is in any way the equivalent of the power of the landlord to exact a security deposit before people move in. And this is like saying that that you can't charge people going into the movies, but you can charge them when they're coming out. Well, it's not because we have an ability of landlords to ask for security deposits in the first place. So this is only applies to people who have already put in their security deposit. And again, it's not the same because everything is based on the contractual agreement that tenants are going to honor their contractual obligations. So I think it's really speculative whether or not people are going to whether landlords or even be actually harmed by this. And again, we're proceeding on a plaintiff's chose to proceed on a facial basis. That is a very high burden. So, again, even putting aside there may be in some instances landlords may be injured. They haven't pled that here. And that's not even the standard. They have to show it's, you know, it's a contracts clause violation in every scenario. And that's surely speculative. And certainly, you know, if you were to reach the issue about the security deposit provisions, we think it doesn't impair the contracts clause or any of the other constitutional provisions plaintiffs have alleged. But, you know, again, there is the police power at stake here. I think we think that we have demonstrated that plaintiffs cannot succeed on a facial contracts clause. Thank you. We'll hear the rebuttal. Thank you, Your Honor. Your Honor, we have to get something very clear at this point. What the legislature did at the end of 2020 and what they did again in 2021 is not a comprehensive scheme in order to deal with COVID and how tenants and landlords deal with each other. It is not. All it did was provide a scheme by which tenants could obtain a stay in new moratorium and kick the bucket down the road. Whether a tenant has actually suffered a hardship will not be determined until those moratorium are over and cases go and are litigated under the Safe Harbor Act. Counsel, are you arguing in relation to the question of the facial as opposed to applied challenge? I'm responding to comments made by the court and argument made by counsel that we have now in place a comprehensive scheme to deal with COVID related issues. It is not. It does nothing more than upon the filing of a hardship declaration, which the landlord cannot challenge. Are you I'm still confused. Are you pressing your security deposit claim or not? Yes. If the governor is willing to admit that this is moving forward, then yes, we are. We are arguing that it is improper. And can I also go back on both of these? Is the relief that you're seeking perspective injunctive relief on both claims? Yes. Anything else? No. Okay. Okay. Now, under the Safe Harbor Act, that is the law from 2000 2020 in June that gives the courts the right to hear the tenant's argument and claim that they've suffered a financial hardship under COVID under the two new laws. That claim will not be litigated, cannot be. Let me ask you this. Let's assume that under the security deposit provision, there is an impairment on the contract. How do you deal with the police power argument that in this time of emergency? It is a reasonable response because it's it's shifting the timing. There are some risks built in, I think. But but how do you respond to the police power argument? Now, I have to just go back a little bit because Governor Cuomo issued an emergency in March on March 7. He issued his first moratorium on March 17th. And it wasn't until May 17th that the legislature did anything. What this I'm not asking about. It would be nice if you would answer my question. I'm getting there. But there was an introduction. My question is, assume that we agree with you that there is an impairment on the contract because with respect to the security deposit, because the landlord could be without a deposit for at least some period of time. And there's some risk that that, you know, you'll never pay. Why isn't that impairment something that we should live with, given the exigencies of the pandemic? Because this all comes down to money. There was at least as easy a way that they could have done this in providing the money, which they've done now. 17 months later, there was no reason to have a provision that shifted the only security that the landlord had to pay money, which, according to this, to the governor, he's going to have a right to get eventually anyway. In fact, the as I've heard it, all of these grants that are available now pay money only. They don't replenish the security deposit such that the movement and payment of money to the landlord under this provision will hurt the landlord because he could have gotten that back anyway under the new legislation and the grants, whereas he won't get it back when it comes to replenishment of the security deposit. All right. Thank you. Thank you both. The court will reserve decision.